**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF CALIFORNIA**

STEVE W. CHENNAULT,
CDCR #D-93021,

Plaintiff,

vs.

MORRIS; R. CAMPBELL; N. RIDGE; LOWE; P. NEWTON; K. SEELY; M. GLYNN,

Defendants.

Civil No. 13cv0854 BTM (KSC)

**ORDER:**

**(1) DENYING MOTION TO APPOINT COUNSEL WITHOUT PREJUDICE;**

**(2) GRANTING DEFENDANTS CAMPBELL, RIDGE, NEWTON, SEELY, GLYNN AND LOWE'S MOTION TO DISMISS PURSUANT TO FED.R.CIV.P. 12(b)(6);**

**(3) GRANTING IN PART AND DENYING IN PART DEFENDANT MORRIS' MOTION TO DISMISS PURSUANT TO FED.R.CIV.P. 12(b)(6) AND**

**(4) DENYING DEFENDANT LOWE'S MOTION TO STRIKE AS MOOT**

**(ECF Doc. Nos. 12, 13, 37)**

In this prisoner civil rights case, Steve Chennault ("Plaintiff"), is proceeding pro se and *in forma pauperis* ("IFP") pursuant to 42 U.S.C. § 1983 and 28 U.S.C. § 1915(a). Defendants

Morris, Campbell, Ridge, Newton, Seely and Glynn have filed a Motion to Dismiss Plaintiff's Complaint pursuant to FED.R.CIV.P. 12(b)(6) (ECF Doc. No. 12). Defendant Lowe filed a separate Motion to Dismiss Plaintiff's Complaint, or in the alternative, Motion to Strike (ECF Doc. No. 13.) After requesting, and receiving, extensions of time to file his Opposition, Plaintiff filed his Opposition to both motions (ECF Doc. No. 25.) All Defendants filed a Reply to Plaintiff's Opposition and the Court permitted Plaintiff to file a Sur-Reply (ECF Doc. Nos. 26, 27, 30.) In addition, Plaintiff has filed a Motion to Appoint Counsel. (ECF Doc. No. 37.)

**I. Factual Background**[1]

Plaintiff was housed at the Richard J. Donovan Correctional Facility ("RJD") in 2011 and 2012. (*See* Compl. at 1.) On February 16, 2012, Plaintiff was transported to an outside medical facility for a tonsillectomy surgery. (*Id.* at 4.) Plaintiff claims that medical personnel from this hospital recommended a "soft diet for 10 days" following the surgery. (*Id.*)

Plaintiff was returned to RJD on the same day as his surgery and he was issued a soft diet "chrono" by Nurse Practitioner Seifulla for fourteen (14) days. (*Id.*) The next day, on February 17, 2012, Plaintiff "notified staff that he did not receive the soft diet." (*Id.*) Plaintiff claims an RJD licensed vocational nurse ("LVN") contacted Defendant Morris, the RJD dietician, and "inquired about the soft diet" for Plaintiff. (*Id.* at 5.) Defendant Morris allegedly informed the LVN that RJD does not "have specific soft food diets" and Plaintiff should "pick and choose" from the general population menu. (*Id.*)

Plaintiff informed Sergeant Davy of the position stated by Defendant Morris and told Sergeant Davy that he "was in pain and wasn't returning to his cell." (*Id.*) Plaintiff claims that he was in pain because of the "humiliating condition [Defendant Morris] placed Plaintiff" and Defendant Morris "refused to issue Ensures as a protein supplement." (*Id.*) Plaintiff claims Sergeant Davy was "disturbed by all that the Plaintiff told him" and went to speak to Defendant Campbell at "Facility A clinic" regarding the diet. (*Id.* at 6.) Defendant Campbell issued Plaintiff a chrono for Ensure for thirty (30) days on February 17, 2012. (*Id.*) However, Plaintiff claims he was not "immediately provided the Ensures" and had to choose food "off the general

---

[1] These factual allegations are summarized from Plaintiff's Complaint (ECF Doc. No. 1)

population menu trays" for seven days. (*Id.*) When Plaintiff did receive the Ensures, he claims that Defendant Campbell only prescribed three (3) Ensures a day which falls far below the minimum standard for proper nutrition as required by prison guidelines. (*Id.* at 8.) On February 26, 2012, Plaintiff alleges that he developed a "throat infection" due to having to "force down hard foods" for which he was prescribed antibiotics. (*Id.*)

In addition, Plaintiff alleges that he suffers from "chronic destructive pulmonary disease (COPD)." (*Id.* at 10.) Defendant Ridge prescribed Plaintiff "salmeterol" which is an inhalant to treat his COPD. (*Id.*) However, Plaintiff alleges he began to suffer from "constant coughing, choking and shortness of breath," when he started using this medication. (*Id.*) Plaintiff claims that he filed a grievance notifying prison officials that this medication "poses a serious health risk to African Americans including untimely death." (*Id.*) The use of the medication was discontinued by Nurse Practitioner Seifulla "due to the serious adverse effects Plaintiff was experiencing." (*Id.* at 11.) Plaintiff further claims that "Defendants Ridge and Lowe never took the initiative to discontinue" this medication. (*Id.*) As a result of the discontinuation of the medication, Plaintiff's "medical problems decreased." (*Id.*) Plaintiff alleges Defendants Ridge and Lowe knew Plaintiff suffered from "hypertension and prostate disease." (*Id.* at 12.) He further claims these Defendants should have known "caution was to be used when Plaintiff was on medication for other medical problems." (*Id.*)

**II. Motion to Appoint Counsel**

Plaintiff requests the appointment of counsel to assist him in prosecuting this civil action. The Constitution provides no right to appointment of counsel in a civil case, however, unless an indigent litigant may lose his physical liberty if he loses the litigation. *Lassiter v. Dept. of Social Services*, 452 U.S. 18, 25 (1981). Nonetheless, under 28 U.S.C. § 1915(e)(1), district courts are granted discretion to appoint counsel for indigent persons. This discretion may be exercised only under "exceptional circumstances." *Terrell v. Brewer*, 935 F.2d 1015, 1017 (9th Cir. 1991). "A finding of exceptional circumstances requires an evaluation of both the 'likelihood of success on the merits and the ability of the plaintiff to articulate his claims pro se in light of the complexity of the legal issues involved.' Neither of these issues is dispositive and both must be

viewed together before reaching a decision." *Id.* (quoting *Wilborn v. Escalderon*, 789 F.2d 1328, 1331 (9th Cir. 1986)).

The Court DENIES Plaintiff's request without prejudice because neither the interests of justice nor exceptional circumstances warrant appointment of counsel at this time. *LaMere v. Risley*, 827 F.2d 622, 626 (9th Cir. 1987); *Terrell*, 935 F.2d at 1017.

**III. Defendants' Motion to Dismiss Plaintiff's Complaint**

Defendants Morris, Campbell, Ridge, Newton, Seely and Glynn seek dismissal of Plaintiff's Complaint pursuant to FED.R.CIV.P. 12(b)(6) on the grounds that: (1) State officials are immune from monetary damages in their official capacities; and (2) Plaintiff has failed to state an Eighth Amendment claim against any of them. (*See* Defs. Morris, Campbell, Ridge, Newton, Seely and Glynn's Notice of Mot. in Supp. of Mot. to Dismiss (ECF Doc. No. 12) at 1-2.) Defendant Lowe seeks dismissal pursuant to FED.R.CIV.P. 12(b)(6) on the same grounds, along with seeking to strike Plaintiff's claims for punitive damages pursuant to FED.R.CIV.P. 12(f). (*See* Lowe's Notice of Mot. to Dismiss (ECF Doc. No. 13) at1-2.)

**A. FED.R.CIV.P. 12(b)(6) Standard of Review**

A Rule 12(b)(6) dismissal may be based on either a "'lack of a cognizable legal theory' or 'the absence of sufficient facts alleged under a cognizable legal theory.'" *Johnson v. Riverside Healthcare System, LP*, 534 F.3d 1116, 1121-22 (9th Cir. 2008) (quoting *Balistreri v. Pacifica Police Dep't*, 901 F.2d 696, 699 (9th Cir. 1990)). In other words, the plaintiff's complaint must provide a "short and plain statement of the claim showing that [he] is entitled to relief." *Id.* (citing FED.R.CIV.P. 8(a)(2)). "Specific facts are not necessary; the statement need only give the defendant[s] fair notice of what ... the claim is and the grounds upon which it rests." *Erickson v. Pardus*, 551 U.S. 89, 127 S. Ct. 2197, 2200 (2007) (internal quotation marks omitted).

A motion to dismiss should be granted if plaintiff fails to proffer "enough facts to state a claim to relief that is plausible on its face." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."

*Ashcroft v. Iqbal*, 556 U.S. ___, 129 S. Ct. 1937, 1949 (2009).

The court need not, however, accept as true allegations that are conclusory, legal conclusions, unwarranted deductions of fact or unreasonable inferences. *See Sprewell v. Golden State Warriors*, 266 F.3d 979, 988 (9th Cir. 2001); *Iqbal,* 129 S. Ct. at 1949 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."); *Twombly*, 550 U.S. at 555 (on motion to dismiss court is "not bound to accept as true a legal conclusion couched as a factual allegation."). "The pleading standard Rule 8 announces does not require 'detailed factual allegations,' but it demands more than an unadorned, the defendant-unlawfully-harmed-me accusation." *Iqbal*, 129 S.Ct. at 1949 (quoting *Twombly*, 550 U.S. at 555).

In addition, claims asserted by pro se petitioners, "however inartfully pleaded," are held "to less stringent standards than formal pleadings drafted by lawyers." *Haines v. Kerner*, 404 U.S. 519-20 (1972); *Erickson*, 551 U.S. at 94. Because "*Iqbal* incorporated the *Twombly* pleading standard and *Twombly* did not alter courts' treatment of *pro se* filings, [courts] continue to construe pro se filings liberally when evaluating them under *Iqbal*." *Hebbe v. Pliler*, 627 F.3d 338, 342 & n.7 (9th Cir. 2010) (citing *Bretz v. Kelman*, 773 F.2d 1026, 1027 n.1 (9th Cir. 1985) (noting that courts "have an obligation where the petitioner is *pro se*, particularly in civil rights cases, to construe the pleadings liberally and to afford the petitioner the benefit of any doubt.")).

**A. Official capacity**

Defendants seek dismissal of Plaintiff's Complaint to the extent he seeks money damages against them based on actions taken in their "official" capacity. While the Eleventh Amendment bars a prisoner's section 1983 claims against state actors sued in their official capacities, *Will*, 491 U.S. at 66, it does not bar damage actions against state officials sued in their personal or individual capacities. *Hafer v. Melo*, 502 U.S. 21, 31 (1991); *Pena v. Gardner*, 976 F.2d 469, 472-73 (9th Cir. 1992). When a state actor is alleged to have violated both federal and state law and is sued for damages under section 1983 in his individual or personal capacity, there is no Eleventh Amendment bar, even if state law provides for indemnification. *Ashker v. California Dep't of Corrections*, 112 F.3d 392, 395 (9th Cir. 1997).

The Supreme Court has made it clear that a plaintiff can establish personal liability in a section 1983 action simply by showing that each official acted under color of state law in deprivation of a federal right. *Hafer*, 502 U.S. at 25. Consequently, the Court **GRANTS** Defendants' Motion to Dismiss on Eleventh Amendment grounds only to the extent that Plaintiff seeks damages against them in their official capacity.

**B. Eighth Amendment claims**

All Defendants move to dismiss Plaintiff's Eighth Amendment inadequate medical care claims on the grounds that they were not deliberately indifferent to his serious medical needs. Where an inmate's claim is one of inadequate medical care, the inmate must allege "acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs." *Estelle v. Gamble*, 429 U.S. 97, 106 (1976). Such a claim has two elements: "the seriousness of the prisoner's medical need and the nature of the defendant's response to that need." *McGuckin v. Smith*, 974 F.2d 1050, 1059 (9th Cir. 1991), *overruled on other grounds by WMX Techs., Inc. v. Miller,* 104 F.3d 1133, 1136 (9th Cir. 1997). A medical need is serious "if the failure to treat the prisoner's condition could result in further significant injury or the 'unnecessary and wanton infliction of pain.'" *McGuckin*, 974 F.2d at 1059 (quoting *Estelle*, 429 U.S. at 104). Indications of a serious medical need include "the presence of a medical condition that significantly affects an individual's daily activities." *Id*. at 1059-60. By establishing the existence of a serious medical need, an inmate satisfies the objective requirement for proving an Eighth Amendment violation. *Farmer v. Brennan*, 511 U.S. 825, 834 (1994).

Before it can be said that a inmate's civil rights have been abridged with regard to medical care, however, "the indifference to his medical needs must be substantial. Mere 'indifference,' 'negligence,' or 'medical malpractice' will not support this cause of action." *Broughton v. Cutter Laboratories*, 622 F.2d 458, 460 (9th Cir. 1980) (citing *Estelle*, 429 U.S. at 105-06). *See also Toguchi v. Chung*, 391 F.3d 1051, 1060 (9th Cir. 2004).

1. Defendant Morris

In his Complaint, Plaintiff claims that he went to the RJD medical clinic on February 17, 2012 to notify the staff that he did not receive his soft food diet that was supposed to be provided

to him following his throat surgery. (*See* Compl. at 4.) Plaintiff alleges that an unnamed nurse at the clinic "called Defendant Morris (the RJD dietician)" and "inquired about the soft diet provision." (*Id.* at 5.) Plaintiff claims this nurse told him Defendant Morris said Plaintiff "should pick and choose" soft food from the general population diet. (*Id.*) He further claims that the nurse told him that Defendant Morris refused to give Plaintiff a chrono for Ensure, a dietary supplement. (*Id.*) In Plaintiff's Opposition, which is verified under penalty of perjury unlike his Complaint, he alleges additional facts not found in his Complaint that Defendant Morris informed the nurse that Plaintiff "needed to be educated about what foods to eat off his tray" and Morris would "fax educational material to Plaintiff." (Pl.'s Opp'n, ECF Doc. No. 25-1, at 2.) Plaintiff claims to never have received this material and further maintains that "Dietician Morris gave the RN on February 17, 2012, erroneous information in regards to there being soft foods on the food trays." (*Id.*)

Based on these allegations, the Court finds that Plaintiff has alleged facts sufficient to state an Eighth Amendment claim against Defendant Morris. In general, deliberate indifference may be shown when prison officials deny, delay, or intentionally interfere with a prescribed course of medical treatment, or it may be shown by the way in which prison medical officials provide necessary care. *Hutchinson v. United States*, 838 F.2d 390, 393-94 (9th Cir. 1988). Here, Plaintiff has alleged that Defendant Morris was aware of the chrono prepared by Plaintiff's physician directing prison officials to provide him with a soft diet. Plaintiff further alleges that Defendant Morris deliberately ignored this chrono when she informed the nurse that the prison had no such provision for a soft diet and she would not provide a liquid supplement. Based on these factual allegations, the Court finds that Plaintiff has alleged facts sufficient to demonstrate that Defendant Morris interfered with a prescribed course of treatment for Plaintiff. Thus, Defendant Morris' Motion to Dismiss for failing to state an Eighth Amendment claim is DENIED.

2. Defendant Campbell

In Plaintiff's Complaint he alleges that he informed Sergeant Davy of his visit with the nurse at the clinic on February 17, 2012. (*See* Compl. at 6.) Plaintiff alleges Defendant Davy

"was disturbed by all that the Plaintiff told him" and went to the medical clinic to "advise Defendant R. Campbell of the situation." (*Id.*) On that same day, Plaintiff claims Defendant Campbell issued Plaintiff a chrono to receive Ensure three times a day for thirty days. (*Id.*) However, Plaintiff claims he did not receive the Ensure for several days and as a result, he had to "pick and choose off the general population menu trays." (*Id.*) Plaintiff claims that while Defendant Campbell did issue the Ensure chrono, it only amounted to 600 calories "falling way below the CDCR minimum standard for proper nutrition." (*Id.* at 8.)

Again, the facts alleged by Plaintiff contain no plausible allegations that Defendant Campbell had actual knowledge of Plaintiff's medical history. There are no facts that demonstrate that Defendant Campbell would know of other food Plaintiff received at the prison and there are no facts that Defendant Campbell was responsible for the delay in receiving the Ensure. Moreover, there are no facts that Defendant Campbell was actually aware there was a delay in receiving the Ensure. If there is no affirmative link between a defendant's conduct and the alleged injury, there is no deprivation of the plaintiff's constitutional rights. *Rizzo v. Goode*, 423 U.S. 362, 370 (1976). Thus, the Court finds that Plaintiff's has failed to state an Eighth Amendment claim against Defendant Campbell.

3. Defendants Seely and Glynn

Plaintiff alleges that Defendant Seely, as the Chief Medical Executive, "was aware of post surgery problems" experienced by Plaintiff because Defendant Seely "signed the chrono for soft diet issued by Nurse Practitioner Seifulla." (Compl. at 9.) Plaintiff alleges Defendant Seely failed to make sure that Plaintiff received the diet. (*Id.*) Plaintiff alleges Defendant Glynn, Chief Medical Officer, "failed to adequately and properly train subordinate medical staff." (*Id.*)

Again, Plaintiff fails to adequately link either of these Defendants to the alleged failure to receive the soft food diet. Plaintiff is seeking to hold them liable in their supervisory capacities. "Causation is, of course, a required element of a § 1983 claim." *Estate of Brooks v. United States*, 197 F.3d 1245, 1248 (9th Cir. 1999). "The inquiry into causation must be individualized and focus on the duties and responsibilities of each individual defendant whose acts or omissions are alleged to have caused a constitutional deprivation." *Leer v. Murphy*, 844

F.2d 628, 633 (9th Cir. 1988) (citing *Rizzo*, 423 U.S. at 370-71). A supervisor is only liable for the constitutional violations of his subordinates if the supervisor participated in or directed the violations, or knew of the violations and with deliberate indifference, failed to act to prevent them. *Wilson v. Seiter*, 501 U.S. 294, 303 (1991). There are no facts that Defendant Glynn was personally aware of Plaintiff's medical condition and there are no facts alleging that Defendant Seely was informed that Plaintiff did not receive a soft food diet following the issuance of the chrono. Plaintiff does not allege that he ever sought to bring this to Defendant Seely's attention.

Thus, as currently pleaded, the Court finds Plaintiff's Complaint sets forth no facts which might be liberally construed to support any sort of individualized constitutional claim against either Defendant Seely or Glynn.

4. Defendants Ridge, Lowe and Newton

Plaintiff claims that he suffers from "Chronic Obstructive Pulmonary Disease ("COPD"). (Compl. at 10.) He alleges that on December 13, 2011, Defendant Ridge prescribed a medication called "Salmeterol" which Plaintiff later discovered is alleged to pose a "serious health risk to African Americans including untimely death." (*Id.*) Plaintiff claims he began to suffer "constant coughing, choking and shortness of breath." (*Id.*) Plaintiff was seen by a nurse practitioner on March 7, 2012 who discontinued the Salmeterol prescription based on Plaintiff's complaints. (*Id.* at 11.) Plaintiff filed a grievance regarding the prescription of this medication on March 23, 2012. He claims that "Defendants Ridge and Lowe never took the initiative to discontinue the Salmeterol medication after the [administrative grievance] was filed." (*Id.*)

First, there are no allegations that Plaintiff ever told any of the named Defendants that he was experiencing alleged side effects to this medication. The facts demonstrate that he informed a nurse practitioner, who is not a party to this action, and this person discontinued the prescription. In addition, Plaintiff appears to allege that Defendants Ridge and Lowe should have discontinued the prescription after he filed his grievance but Plaintiff alleges that the prescription had already been discontinued two weeks prior to the time that he filed the grievance. There are no other allegations as to Defendant Lowe.

/ / /

There are no allegations as to Defendant Newton except Plaintiff's claim that Defendant Newton "reviewed Plaintiff's medical records with knowledge that the potentially fatal medication was prescribed and continued to give it to the Plaintiff." (Compl. at 3.) Plaintiff does not mention Defendant Newton in the body of the Complaint. The Court cannot speculate as to what to role, if any, Newton played. Plaintiff must provide additional factual allegations that would directly connect Defendant Newton to an alleged constitutional violation.

Finally, Plaintiff attempts to defeat the Defendants' Motions by supplying factual allegations in his Opposition that are not contained in the Complaint. However, Plaintiff cannot avoid dismissal by alleging new facts in his Opposition. *See Schneider v. Calif. Dep't of Corrections*, 151 F.3d 1194, 1197 n.1 (9th Cir. 1988) (finding that "'new' allegations contained in the [plaintiff]'s opposition . . . are irrelevant for Rule 12(b)(6) purposes.")

For all the above stated reasons, the Court finds that Plaintiff has failed to state an Eighth Amendment claim against the named Defendants with the exception of Defendant Morris.

**IV. Conclusion and Order**

Based on the foregoing, the Court hereby:

(1) **DENIES** Plaintiff'S Motion to Appoint Counsel (ECF Doc. No. 37) without prejudice;

(2) **GRANTS** Defendant Morris' Motion to Dismiss official capacity claims and **DENIES** Defendant Morris' Motion to Dismiss Plaintiff's Eighth Amendment claims pursuant to FED.R.CIV.P. 12(b)(6);

(3) **GRANTS** Defendants' Campbell, Ridge, Newton, Seely, Glynn and Lowe's Motions to Dismiss pursuant to FED.R.CIV.P. 12(b)(6) (ECF Doc Nos. 12, 13).

(4) Plaintiff has forty five (45) days from the entry of this Order to either: (1) file a First Amended Complaint to correct the deficiencies of pleading identified in the Court's Order; or (2) file a Notice with the Court indicating an intent to proceed with this matter as to Defendant Morris only.

If Plaintiff chooses to file a First Amended Complaint it must be complete in itself without reference to his previous Complaint. Defendants not named and all claims not re-

alleged in the First Amended Complaint will be deemed to have been waived.

If Plaintiff chooses to proceed as to Defendant Morris only, the Court will enter an Order dismissing the remaining Defendants from this action and direct the United States Marshal Service to effect service of Plaintiff's Complaint on Defendant Morris.

**IT IS FURTHER ORDERED that:**

(5) Defendant Lowe's Motion to Strike (ECF Doc. No. 13) is **DENIED** as moot and without prejudice.

(6) The Clerk of Court is directed to mail Plaintiff a court approved civil rights complaint form.

**IT IS SO ORDERED.**

DATED: June 9, 2014

BARRY TED MOSKOWITZ, Chief Judge
United States District Court