UNITED STATES DISTRICT COURT

SOUTHERN DISTRICT OF CALIFORNIA

| STEVE W. CHENNAULT, CDCR # F-39579, Plaintiff, vs. MORRIS, Registered Dietician, et al., Defendants. | Case No.: 3:13-cv-00854 BTM (KSC)<br><br>**ORDER GRANTING DEFENDANT'S MOTION FOR SUMMARY JUDGMENT PURSUANT TO Fed. R. Civ. P. 56 AND 42 U.S.C. § 1997e(a) [Doc. No. 103]** |
|---|---|

Steve W. Chennault ("Plaintiff"), is a prisoner currently incarcerated at the California Medical Facility in Vacaville, California, and is proceeding pro se in this civil action pursuant to 42 U.S.C. § 1983. Defendant Nooris[1] is a dietician who was employed at the Richard J. Donovan Correctional Facility ("RJD") where Plaintiff was incarcerated in 2011 and 2012. *See* Doc. No. 1 ("Compl.") at 1-2.

## I.      Procedural History

---

[1] Defendant's moving papers indicates that she was erroneously sued as "Morris" and the correct spelling of her name is "Nooris" which is how the Court will refer to this Defendant. (*See* Def.'s Memo of P.& A. in Supp. of Summ. J. (Doc. No. 103-2) at 5.)

1

On July 31, 2013, the Court granted Plaintiff leave to proceed *in forma pauperis* pursuant to 28 U.S.C. § 1915(a) and directed the U.S. Marshal to effect service on the named Defendants.  *See* Doc. 3, July 31, 2013 Order at 3-4.

Defendants filed two motions to dismiss Plaintiff's Complaint.  *See* Doc. Nos. 12, 13.  The Court granted in part, and denied in part, Defendants' motions.  *See* Doc. No. 39, June 9, 2014 Order at 10-11.  The Court provided Plaintiff with the opportunity to file an amended pleading or notify the Court of the intention to pursue the claims against Defendant Nooris only.  *See id.* at 11.  On August 21, 2014, Plaintiff notified the Court that he intended to proceed only as to the claims against Defendant Nooris.  *See* Doc. No. 45.  The Court issued an Order dismissing all Defendants from this action with the exception of Defendant Nooris who was directed to file a responsive pleading.  *See* Doc. No. 48, Aug. 25, 2014 Order at 2.

On October 26, 2015, Defendant Nooris filed a Motion for Summary Judgment pursuant to FED. R. CIV. P. 56.  *See* Doc. No. 103.  In response to the Court's Notice to Plaintiff of Defendant's Motion Summary Judgment[2] (Doc. No. 108), Plaintiff filed an Opposition (Doc. No. 110), and Defendant filed a Reply (Doc. No. 111).

After careful review of Defendant's Motion, as well as all evidence submitted both by Defendant in support of summary judgment and Plaintiff in response, the Court GRANTS Defendant's Motion for Summary Judgment for the reasons explained below.

## II.   Plaintiff's Factual Allegations

Plaintiff was housed at the Richard J. Donovan Correctional Facility ("RJD") in 2011 and 2012.  (*See* Compl. at 1.)  On February 16, 2012, Plaintiff was transported to an outside medical facility for a tonsillectomy surgery.  (*Id.* at 4.)  Plaintiff claims that medical personnel from this hospital recommended a "soft diet for 10 days" following the surgery.  (*Id.*)

---

[2] *See Klingele v. Eikenberry*, 849 F.2d 409 (9th Cir. 1988) and *Rand v. Rowland*, 154 F.3d 952 (9th Cir. 1998) (en banc)

1    Plaintiff was returned to RJD on the same day as his surgery and he was issued a
2 soft diet "chrono" by Nurse Practitioner Seifulla for fourteen (14) days.  (*Id.*)  The next
3 day, on February 17, 2012, Plaintiff "notified staff that he did not receive the soft diet."
4 (*Id.*)  Plaintiff claims an RJD licensed vocational nurse ("LVN") contacted Defendant
5 Nooris, the RJD dietician, and "inquired about the soft diet" for Plaintiff.  (*Id.* at 5.)
6 Defendant Nooris allegedly informed the LVN that RJD does not "have specific soft food
7 diets" and Plaintiff should "pick and choose" from the general population menu.  (*Id.*)
8    Plaintiff informed Sergeant Davy of the position stated by Defendant Nooris and
9 told Sergeant Davy that he "was in pain and wasn't returning to his cell."  (*Id.*)  Plaintiff
10 claims that he was in pain because of the "humiliating condition [Defendant Nooris]
11 placed Plaintiff" and Defendant Nooris "refused to issue Ensures as a protein
12 supplement."  (*Id.*)  Plaintiff claims Sergeant Davy was "disturbed by all that the Plaintiff
13 told him" and went to speak to Defendant Campbell at "Facility A clinic" regarding the
14 diet.  (*Id.* at 6.)  Defendant Campbell issued Plaintiff a chrono for Ensure for thirty (30)
15 days on February 17, 2012.  (*Id.*)  However, Plaintiff claims he was not "immediately
16 provided the Ensures" and had to choose food "off the general population menu trays" for
17 seven days.  (*Id.*)  When Plaintiff did receive the Ensures, he claims that Defendant
18 Campbell only prescribed three (3) Ensures a day which falls far below the minimum
19 standard for proper nutrition as required by prison guidelines.  (*Id.* at 8.)  On February 26,
20 2012, Plaintiff alleges that he developed a "throat infection" due to having to "force
21 down hard foods" for which he was prescribed antibiotics.  (*Id.*)

**III.   Defendant's Motion**

Defendant Nooris seeks summary judgment on the ground that there is no triable issue of material fact to show that Defendant Nooris was deliberately indifferent to Plaintiff's serious medical needs in violation of the Eighth Amendment.  Alternatively, Defendant Nooris argues that she is entitled to qualified immunity.  *See* Def.'s Mem. of P.& A. in Supp. of Summ. J. (Doc. No. 103-2) at 5.

///

### A. Legal Standard

Rule 56(a) provides that a court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a).

Under summary judgment practice, the moving party always bears the initial responsibility of informing the district court of the basis for its motion, and identifying those portions of "the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any," which it believes demonstrate the absence of a genuine issue of material fact. *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986) (quoting Fed.R.Civ.P. 56(c))  If the moving party meets its initial responsibility, the burden then shifts to the nonmoving party to establish, beyond the pleadings, that there is a genuine issue for trial. *Id.* at 324.

To avoid summary judgment, the non-moving party is "required to present significant, probative evidence tending to support h[is] allegations," *Bias v. Moynihan*, 508 F.3d 1212, 1218 (9th Cir. 2007) (citations omitted), and must point to some evidence in the record that demonstrates "a genuine issue of material fact [which], with all reasonable inferences made in the plaintiff[]'s favor, could convince a reasonable jury to find for the plaintiff[]." *Reese v. Jefferson School Dist. No. 14J*, 208 F.3d 736, 738 (9th Cir. 2000) (citing Fed.R.Civ.P. 56; *Celotex*, 477 U.S. at 323).  The opposing party cannot rest solely on conclusory allegations of fact or law. *Berg v. Kincheloe*, 794 F.2d 457, 459 (9th Cir. 1986).

### B. Defendant's Arguments

Defendant argues that she is entitled to summary judgment as to Plaintiff's Eighth Amendment claims based on the following reasons: (1) "CDCR does not provide therapeutic 'soft diets'"; (2) "Plaintiff admits he was instructed to choose soft foods" based on CDCR policy; and (3) Nooris "had no involvement with Plaintiff's post-tonsillectomy treatment." Def.'s Memo of P. & A. in Supp. of Summ. J, Doc. No. 103-2 at 5.

### C.   Analysis

The Eighth Amendment prohibits punishment that involves the "unnecessary and wanton infliction of pain." *Estelle v. Gamble*, 429 U.S. 97, 103 (1976) (quoting *Gregg v. Georgia*, 428 U.S. 153, 173 (1976)); *Toguchi v. Chung*, 391 F.3d 1051, 1057 (9th Cir. 2004).  The Eighth Amendment's cruel and unusual punishments clause is violated when prison officials are deliberately indifferent to a prisoner's serious medical needs. *Estelle*, 429 U.S. at 105.  "Medical" needs include a prisoner's "physical, dental, and mental health." *Hoptowit v. Ray*, 682 F.2d 1237, 1253 (9th Cir. 1982).

To show "cruel and unusual" punishment under the Eighth Amendment, the prisoner must point to evidence in the record from which a trier of fact might reasonably conclude that Defendant's medical treatment placed Plaintiff at risk of "objectively, sufficiently serious" harm and that Defendant had a "sufficiently culpable state of mind" when she either provided or denied him medical care. *Wallis v. Baldwin*, 70 F.3d 1074, 1076 (9th Cir. 1995) (internal quotations omitted).  Thus, there is both an objective and a subjective component to an actionable Eighth Amendment violation. *Clement v. Gomez*, 298 F.3d 898, 904 (9th Cir. 2002); *Toguchi*, 391 F.3d at 1057 ("To establish an Eighth Amendment violation, a prisoner 'must satisfy both the objective and subjective components of a two-part test.'") (quoting *Hallett v. Morgan*, 296 F.3d 732, 744 (9th Cir. 2002)).

The objective component is generally satisfied so long as the prisoner alleges facts to show that his medical need is sufficiently "serious" such that the "failure to treat [that] condition could result in further significant injury or the unnecessary and wanton infliction of pain." *Clement*, 298 F.3d at 904 (quotations omitted); *see also Doty v. County of Lassen*, 37 F.3d 540, 546 (9th Cir. 1994) ("serious" medical conditions are those a reasonable doctor would think worthy of comment, those which significantly affect the prisoner's daily activities, and those which are chronic and accompanied by substantial pain).

/ / /

However, the subjective component requires the prisoner to also allege facts which show that the officials had the culpable mental state, which is "'deliberate indifference' to a substantial risk of serious harm." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998) (quoting *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)).  As stated above, "deliberate indifference" is evidenced only when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *Toguchi*, 391 F.3d at 1057.

Inadequate treatment due to "mere medical malpractice" or even gross negligence, does not amount to a constitutional violation. *Estelle*, 429 U.S. at 106; *Hallett*, 296 F.3d at 744; *Wood v. Housewright*, 900 F.2d 1332, 1334 (9th Cir. 1990).  In other words, an "official's failure to alleviate a significant risk that he should have perceived but did not, . . . cannot . . . be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838; *Toguchi*, 391 F.3d at 1057,

In this matter, Plaintiff claims that Defendant Nooris refused to provide him with a "soft diet" in contradiction to the recommendations by outside medical personnel following his tonsillectomy surgery.  Specifically, Plaintiff claims a RJD licensed vocational nurse ("LVN") contacted Defendant Nooris, the RJD dietician, and "inquired about the soft diet" for Plaintiff.  (*See Compl.* at 5.)  Defendant Nooris allegedly informed the LVN that RJD does not "have specific soft food diets" and Plaintiff should "pick and choose" from the general population menu.  (*Id.*)

First, Defendant acknowledges that Nurse Practitioner Seifulla issued a "Comprehensive Accommodation Chrono" on Plaintiff's behalf in which it was noted "soft diet x14 days."  Def.'s Memo of P. & A. in Supp. of Summ. J, Doc. No. 103-2, at 6; Ex. 3, Doc No. 103-3, at 7, "Comprehensive Accommodation Chrono" dated Feb. 17, 2012.  In response, Defendant has supplied the declaration of Adelita Basto, a Clinical Dietician at RJD.  *See* Basto Decl., Doc. No. 103-5.

Plaintiff claims that he was issued a "chrono" in which he was to receive "Ensure" for thirty days on February 17, 2012. Compl. at 6. However, Plaintiff claims that he did not actually begin receiving the Ensure until seven days later. *Id.* In Basto's Declaration, she indicates that she was "responsible for nutritional review and assessment to properly implement outpatient liquid supplement orders." Basto Decl. at ¶ 16. In addition, as the "CDCR clinical dietician" it was her responsibility to "review the order, review the inmate's file for any dietary issues, approve the appropriate liquid diet supplement order, and forward appropriate instructions to RJD Culinary staff for provision to the inmate." *Id.* In the case of Plaintiff's liquid diet order, Basto declares she both received and processed Plaintiff's order on February 21, 2012. *Id.* She also reviewed and processed a renewal of this liquid diet order on March 19, 2012. *Id.* at ¶ 17. Finally, Basto also declares that "Defendant Nooris did not approve or deny either of these liquid diet supplement orders, and had no role in implementing the orders." *Id.* at ¶ 18.

Plaintiff does not offer any evidence or point to anything in the Court's record to dispute Basto's showing that she processed and approved the request to provide Plaintiff with a liquid supplementary diet on the day she received the request. Plaintiff, other than an allegation in his Complaint, does not indicate how any delay in receiving this supplement was due to any named Defendants' "deliberate indifference." The record before the Court does not show that any named Defendant played any role in the alleged delay in receiving this supplementary liquid diet. In fact, the record shows that Plaintiff received this supplementary liquid diet well beyond the fourteen (14) days initially recommended.

Finally, Defendant Nooris also moves for summary judgment on the ground that she was not "involved in any discussion, information, or decision regarding a soft diet for Plaintiff." Def.'s Memo of P. & A. in Supp. of Summ. J, Doc. No. 103-2, at 10; *see also* Nooris Decl., Doc. No. 103-4, at ¶ 14; Basto Decl., Doc. No. 103-5, at ¶ 14.

As stated above, Plaintiff claims an RJD licensed vocational nurse ("LVN") contacted Defendant Nooris, the RJD dietician, and "inquired about the soft diet" for

Plaintiff. *See* Compl. at 5. Defendant Nooris allegedly informed the LVN that RJD does not "have specific soft food diets" and Plaintiff should "pick and choose" from the general population menu. *Id.* Basto declares that RN Gunther "telephoned the dietician's office at the RJD Correctional Treatment Center (CTC"), and left a voice message for Defendant Nooris." Basto Decl., Doc. No. 103-5, at ¶ 13. It was Basto who returned the call, instead of Nooris. *Id.* She confirmed with RN Gunther that she was to provide Plaintiff with the "standard CDCR educational material regarding how to select soft foods from the prison menu." *Id.* According to Basto, "RN Gunther confirmed to me that she provided those materials, which are stocked at the nurse's station" and "RN Gunther also recorded that Plaintiff verbalized that he understood the instructions in her notes." *Id.* Moreover, as set forth above, it was Basto who reviewed and approved the request for Plaintiff to receive a liquid dietary supplement for an initial thirty (30) day period and renewed this request for another thirty (30) days. *Id.* at ¶ 16.

Plaintiff disputes the assertion that Defendant Nooris had "no involvement" because he argues that Defendant Nooris should remain liable "as the Department Head." Pl.'s Opp'n, Doc. No. 110, at 13. Plaintiff does not dispute Defendant Nooris' showing that she had no actual involvement in the decisions or instructions regarding his alleged need for a "soft diet" or any other medical treatment following his surgery. Instead Plaintiff acknowledges Defendant's argument, without providing any evidence to dispute it, that "Dietician Basto did not advise, confer or inform Defendant, who is Department Head on this inmate's medical needs." *Id.* at 14.

As stated above, the subjective component of an Eighth Amendment claim requires the prisoner to allege facts which show that the officials had the culpable mental state, which is "'deliberate indifference' to a substantial risk of serious harm." *Frost v. Agnos*, 152 F.3d 1124, 1128 (9th Cir. 1998) (quoting *Farmer v. Brennan*, 511 U.S. 825, 835 (1994)). As stated above, "deliberate indifference" is evidenced only when "the official knows of and disregards an excessive risk to inmate health or safety; the official must both be aware of the facts from which the inference could be drawn that a substantial risk

8

of serious harm exists, and he must also draw the inference." *Farmer*, 511 U.S. at 837; *Toguchi*, 391 F.3d at 1057. Here, the evidence before this Court, and admitted to by Plaintiff, shows that Defendant Nooris had no knowledge of any risk to Plaintiff's health or safety or that she should have known that there was a substantial risk of serious harm. Therefore, there is no evidence in the record to support a triable issue of material fact to support a claim of "deliberate indifference" on the part of Defendant Nooris.

Moreover, Plaintiff's claims in his Opposition rest solely on Defendant Nooris' role as a supervisor. "A plaintiff must allege facts, not simply conclusions, that show that an individual was personally involved in the deprivation of his civil rights." *Barren v. Harrington*, 152 F.3d 1193, 1194 (9th Cir. 1998). A person deprives another of a constitutional right under section 1983, where that person "'does an affirmative act, participates in another's affirmative acts, or omits to perform an act which [that person] is legally required to do that causes the deprivation of which complaint is made.'" *Johnson v. Duffy*, 588 F.2d 740, 743 (9th Cir. 1978). The "requisite causal connection can be established not only by some kind of direct personal participation in the deprivation, but also by setting in motion a series of acts by others which the actor knows or reasonably should know would cause others to inflict the constitutional injury." *Id.* at 743-44. There is no respondeat superior liability under § 1983. Therefore, a supervisor, like Nooris, may be held liable for the constitutional violations of her subordinates only if she "participated in or directed the violations, or knew of the violations and failed to act to prevent them." *Taylor v. List*, 880 F.2d 1040, 1045 (9th Cir. 1989).

Here, Plaintiff does not offer any argument or evidence to contradict the declarations of Nooris or Basto that claim Nooris was never made aware of Plaintiff's claims or medical needs. Plaintiff simply does not refute this nor does Plaintiff provide any admissible evidence that would indicate that he ever made Defendant Nooris aware of his complaints.

Plaintiff has failed to provide any evidence that would create a genuine issue of material fact with respect to his claim that Defendant Nooris was deliberately indifferent

to his serious medical needs.  *See Farmer*, 511 U.S. at 834; *Estelle*, 429 U.S. at 106. Therefore, the Court GRANTS Defendant Nooris' Motion for Summary Judgment as to all claims against her.

### D.   Qualified Immunity

Finally, Defendant argues that she is entitled to qualified immunity.  Because the Court has found no triable issue of fact exists to show Plaintiff's constitutional rights were violated by Defendant Nooris, it need not reach any issues regarding qualified immunity.  *See Saucier v. Katz,* 533 U.S. 194, 201 (2001) ("If no constitutional right would have been violated were the allegations established, there is no necessity for further inquiries concerning qualified immunity."); *County of Sacramento v. Lewis*, 523 U.S. 833, 841 n.5 (1998) ("[T]he better approach to resolving cases in which the defense of qualified immunity is raised is to determine first whether the plaintiff has alleged the deprivation of a constitutional right at all.").

### IV.   Conclusion and Order

**For the reasons set forth above, the Court**

GRANTS Defendant's Motion for Summary Judgment as to all claims pursuant to Fed. R. Civ. P. 56(c).  (Doc. No. 103.)

The Clerk of Court shall enter judgment for Defendant and close the file.

**IT IS SO ORDERED**.

Dated: March 22, 2016        _____
            **Hon. Barry Ted Moskowitz, Chief Judge**
            United States District Court